No. 10,998.

## SUCCESSION OF J. W. MONTGOMERY.

### ON OPPOSITION TO ACCOUNT.

The renunciation of a married woman to her rights against her husband and his property, in order to be valid and binding, must have been made as required by the act of 1835 embodied in R. C. C., Art. 129.

The notary must have explained to her, out of the presence of her husband, the nature of her rights and that of the contract she agrees to, and must have detailed the circumstances and the occurrence in the act.

A failure to comply with the requirements of the law, which are conditions precedent, vitiates the renunciation.

The presumption *omnia rite acta* does not attach in a case like this.

It does in that of a District Judge authorizing a married woman to borrow and mortgage, because he is a *judicial* officer empowered to hear and determine; but not in that of a notary, who is a ministerial officer who has no judgment whatever to exercise and pronounce.

The burden is on the creditor who opposes the renunciation of a married woman in order to defeat her money and mortgage claims against her husband and his property to show, by legal evidence, that the essential formalities required by Art. 129, R. C. C., as conditions precedent for the validity of the renunciation, have been observed.

APPEAL from the Eighth District Court, Parish of East Carroll. *Montgomery, J.*

*J. M. Kennedy* and *Jos. E. Ransdell* for the Appellees:

Under the law, married women are not *sui juris*. In their case incapacity is the rule; capacity the exception. Their incapacity to contract is specially declared by law. C. C. 1782.

Where the law provides certain formalities to be observed, and certain things to be done, in order to bind a married woman, these formalities must be complied with, and those things done, else she is not bound.

The statute of March 27, 1835, now Art. 129 of the Civil Code, which capacitates or authorizes married women to renounce their paraphernal and other rights against their husbands in favor of third persons, requires that the notary who takes the renunciation shall explain to the wife, out of the presence of her husband, the nature of those rights, and of the renunciation she is about to make, and shall set forth in the act itself the fact of this explanation being made. C. C. 129.

When the certificate of the notary in the act fails to detail and set forth this explanation, as required by the law, it is fatally defective; and the renunciation is invalid, and of no effect. Suc. of Gremillon, 4 An. 411; Ashford vs. Tibbitts, 11 An. 167.

The granting of a certificate by a judge authorizing married women to mortgage their separate property for borrowed money, etc., under Arts. 127, etc., of the Civil Code, is a judicial act, not to be likened to the mere ministerial duty of the notary in cases of renunciation; and the presumptions obtaining in favor of the regularity and validity of the acts and certificate of the judicial, do not obtain in favor of those of the ministerial officer. 37 An. 213; 30 An. 811.

Succession of Montgomery.

*J. L. Dagg* and *C. S. Wyly contra:*

The law requires the notary to explain verbally to the married woman, out of her husband's presence, the nature of her rights and of the contract she agrees to, and the court will presume that he did his duty in this respect, as he is a sworn officer, and there is no proof that he failed in his duty. A sworn officer is always presumed to have done his duty until the contrary is proven. 28 An. 232; Hennen's Digest, "Evidence," III (d), No. 17, and authorities cited.

The declarations of parties to a public act can not be contradicted by those who made the declarations, unless upon allegations of fraud, duress or error. 16 An. 307.

Although the notary's act does not recite that he explained verbally to the married woman, out of her husband's presence, the nature of her rights, etc., her renunciation will be held valid for the same reason that a married woman was held bound for her note executed, under the authorization of the judge, notwithstanding the certificate of the judge did not state that she was examined by him separate and apart from her husband, as required by Art. 128, R. C. C. 28 An. 232.

The fact that the notary is a ministerial officer, while the judge is a judicial officer, does not change the character of the duties required of each in reference to the recitals to be made by each respectively. The judge, in making the examination required by Art. 127, R. C. C., and in deciding whether or not the authority to borrow money should be granted, performs, perhaps, a judicial function. But when he draws the certificate required by Art. 128 his act is purely ministerial, as much so as is that of the notary in making the recitals required by Art. 129. Hence the decision in the Locke case (28 An. 132) is directly in point.

It having been held that, in the absence of allegations and proof of fraud, the wife can not contradict the judge's certificate and thereby be relieved of her obligations, so much more should she, in the absence of allegations and proof of fraud, duress or error, be held to her mere renunciation of rights in an act in which she assumed no obligations. Pilcher vs. Schwartz & Pugh, 28 An. (not reported; see Opinion Book 45, folio 407).

———

The opinion of the court was delivered by

BERMUDEZ, C. J. This controversy involves the validity of a wife's renunciation of her rights against her husband and the property mortgaged by him, in favor of a creditor.

J. W. Montgomery having died, his widow filed an account of her administration of his estate, on which she placed herself as a creditor for $6307, with the legal mortgage accorded by law to secure its payment, the same to be satisfied in preference to the claims of *all* other creditors.

The account was opposed. Mrs. Montgomery having died, her son was appointed to succeed her, and he filed another account, adopting that previously presented.

There was judgment dismissing the opposition and maintaining the

claim and the mortgage contended for in favor of Mrs. Montgomery and of her succession.

It is from that judgment that the present appeal is taken.

There is no contention as to the amount of the claim and as to a proper registry of it, at the date of the mortgage by Montgomery in favor of Davis, in 1881.

The litigation relates to the *validity* of the renunciation, mentioned in the notarial act, as having been made by Mrs. Montgomery.

That instrument contains the following declaration:

"I certify that there does not exist on the Deesona and other plantations any mortgage, except the following legal mortgage in favor of Mrs. Eliza Vail, wife of the mortgagor, for $6945.05, recorded on the 3d day of August, 1874; and she appears and declares that she renounces unto said G. Malin Davis her right of mortgage on said property, and agrees that his mortgage shall take precedence of hers, and she further declares that she has no other mortgage against her husband's property, recorded or otherwise."

It is claimed that this renunciation meets the requirements of the law. R. C. C. 129, originally act of 1835, March 27, Sec. 2, which reads as follows:

"Married women, above the age of twenty-one years, shall have the right, with the consent of their husbands, by act framed before a notary public, to renounce in favor of third persons their matrimonial, dotal, paraphernal and other rights. The notary public, before receiving the signature of any married woman, shall detail in the act and explain verbally to said married woman, out of the presence of her husband, the nature of her rights and of the contract she agrees to." Also R. S. 1717, 2518, 3985.

On the other hand it is contended that the recital does not show that those legal exigencies have been satisfied, and therefore, in the absence of such, the renunciation is defective and null.

A simple reading of the provision forcibly impresses upon the mind that the law permits a renunciation, *provided* the notary, *before* receiving the signature of the married woman, explains to her verbally, *out of the presence of her husband*: 1. The nature of her rights *and* that of the contract she agrees to. 2. That he shows that he has done so, by *detailing, in the act*, the nature of the double information which he has thus given her; and that the formalities have been fully observed. It is not until after he has so furnished her

this information and thus detailed what has occurred that he has authority to receive her signature.

A compliance with those requirements is an essential condition precedent, for the validity of such renunciations, which is exacted for the protection of married woman who are *inopes concilii;* in order to shield them, as effectually as practicable, from marital pressure, intimidation or captation. It is nothing but just that they should previously know their rights, just as they are, with precision, and it is for that purpose that the notary is required to inform them, and to show *how* he has done so in order that they may not afterward deny that they had full knowledge of those rights, the whole, of course, to occur *out* of the presence of the husband. The proof which the law allows to show that those formalities have been gone through faithfully is the notary's recital in the act.

In the matter of the succession of Gremillon, 4 An. 411, the declaration made by the parish judge, acting as a notary, was attacked as insufficient and it was so held; yet by reference to the act it is perceived that it declares that Mrs. Gremillon voluntarily appeared, with her husband's authority, to renounce generally to all the rights whatever she had on the property mortgaged by her husband in favor of Poydras, whereupon the judge explained to her specifically the rights which the law accords her in such a case, which he classified under *five* heads, covering upward of a close written page, winding up with a statement that she notwithstanding persisted in renouncing, and had declared that neither she nor her heirs would ever run counter the mortgage for any motive whatsoever. See record No. 1183 in the clerk's office.

It will be noticed that the parish judge, *ex-officio* notary, had failed to mention the all-important fact, if it existed, that all this had occurred " *out of the presence of the husband.*"

The then court, therefore, said: The statute of 1835 * * * contains the *proviso* that the notary public, before receiving the signature of any married woman, shall detail in the act and verbally explain to her, out of the presence of her husband, the nature of her rights and of the contract she agrees to. A substantial compliance with the proviso is essential to the validity of the renunciation. One of its motives was to guard the wife against the influence of the husband, the moral effect of whose presence might control her will

to the prejudice of her interest. This formality was disregarded in the present case, and the renunciation must be held inoperative.

In another case, Ashford vs. Tibitts, 11 An., p. 168, it appears from the transcript that the act of mortgage contained the following declaration by the notary:

" Then appeared Mrs. Harriet Ashford, wife of said Tibitts, who, being by me made acquainted with her rights and privileges on the property of her said husband, apart and out of his hearing, did notwithstanding declare to me that she does by this act formally renounce the same in favor of the said Mrs. Woodruff for the purpose aforesaid." See record No. 4460 in the clerk's office.

It will be observed that although the notary stated that he had made the lady acquainted with her rights and privileges, *out* of her husband's presence, he failed to specify or detail in the act the nature of the rights explained to her.

On the contention that this statement was, however, a substantial compliance with the law, the then court said in a quite summary way:

" We think that her (Mrs. Ashford's) mortgage should have been recognized, as her renunciation was defective, in that the notary did not detail in the act the nature of the rights she renounced," referring to the statute 1835 and to 4 An 412, Succession of Gremillon.

In the *instant* case, it is more than apparent that the renunciation is fatally defective, not only because the notary did not detail the rights, the double information which is to be given by him to the wife, but also because it does not appear that what transpired, if anything of that kind did, occurred *out* of the presence of the husband.

A failure to have made a recital in the act of those circumstances implies that the formalities were not fulfilled, and carries the nullity of the renunciation.

The further defence that the presumption is that the notary, who is a sworn public officer, must be presumed to have done his duty, and that this presumption has not been rebutted, can not hold.

In support of this position decisions are invoked which go to the extent that, where a district judge had issued a certificate to a married woman to authorize her to borrow money, and in order to secure its reimbursement, to mortgage her individual property, omitting to mention that he had examined her *out* of the presence of her hus-

band, as directed by the statute, the presumption *omnia rite acta,* that he had done his duty had been held to attach. R. C. C. 128; 28 An. 232; Locke vs. Lafitte; Pilcher vs. Schwartz, Id. 494.

In refutation of this contention it suffices to say that the judge, in such cases, acts in his *judicial* capacity, exercising a judicial discretion, *hearing* and *determining*. He is required officially to ascertain a certain condition of things, and after he has done so to *decide* whether the authority shall or not be granted; so much so, that in a proper case his refusal might be the subject of an appeal. The notary, on the contrary, is not a *judicial* officer. He is vested with mere ministerial powers. He is a scribe, who has authority to identify parties appearing before him and authenticate their declarations. In cases of *renunciation* he is commanded to do certain things, and he must, where he has done them, *detail* in the act what he has accomplished. He has no power to refuse to receive the renunciation, if made legally, or to approve or to disapprove the same. His omissions or commissions are not judgments subject to be appealed from.

In the case of Ashford, 11 An., in which it appeared in the act that the notary stated that he had made the lady acquainted with her rights and privileges, the court did not hold that the presumption attached, that he had done his duty.

It is proper to add that the burden of proving fulfilment of the formalities was on the creditor who *affirmed* a valid renunciation, and not on the wife who *denied* the same.

Judgment affirmed.